UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Glenn Fuerst, et al<br><br>Plaintiff<br><br>v.<br><br>WVSR, LLC.<br><br>Defendant | Civil Action No. 1:20-cv-00369-AJ |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE**

**EXPERT WITNESS DAVID MORLEY OR, IN THE ALTERNATIVE, TO SCHEDULE**

**A DAUBERT HEARING**

Now comes the Defendant in this matter, WSVR, LLC ("Waterville Valley" or "Defendant") and submits this memorandum of law in support of its motion to strike the Plaintiff's expert medical witness, Dr. David Morley.

## I.    Background

This case arises from an alleged slip-and-fall accident on March 13, 2019. Glenn and Donna Fuerst ("the Plaintiffs"), residents of New York, arrived at Waterville Valley Ski Resort on March 13, 2019 to ski. Complaint, ¶ 2. The Plaintiffs' Complaint is attached hereto as **Exhibit 1**. They allege Mr. Fuerst climbed a series of exterior concrete stairs, unloaded ski equipment on a

1

ski rack, and then descended back down the same set of stairs which were immediately adjacent to a skiable area of snow on the bottom of the mountain. Complaint, ¶ 8. The Plaintiffs allege that there was snow and ice on the side of the stairs. Complaint, ¶ 10.

While Mr. Fuerst was walking down the middle of the stairs, in an area that was completely clear of observable snow, he fell and allegedly sustained injuries. Complaint, ¶ 13, 17; Glenn Fuerst's deposition at 122:1-23, 124:1-23. Glenn Fuerst's deposition is attached hereto as **Exhibit 2**. Mr. Fuerst alleged causes of action for negligence, violation of unspecified state or local building or fire code(s) and recklessness. Relying on her husband's allegations, Donna Fuerst has asserted a separate claim for loss of consortium. Complaint ¶¶ 44-46.

As part of discovery in the subject action, the Plaintiffs have filed on June 11, 2021 a preliminary expert disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(B) in which they identify Dr. David Morley, Jr. of Lowell, Massachusetts as a retained medical expert witness for trial. Plaintiffs' Expert Disclosure is attached in its entirety hereto as **Exhibit 3**. As part of the Expert Disclosure, the Plaintiffs have included a report produced by Dr. Morley on April 27, 2021 regarding Glenn Fuerst's injuries purportedly caused by his alleged fall at Waterville Valley. The report of Dr. Morley is attached hereto as **Exhibit 4**. Dr. Morley concluded that Mr. Fuerst's right hip fracture was causally related to the alleged fall, that Mr. Fuerst's medical treatment to date was reasonable and customary for the treatment of a right hip injury, that Mr. Fuerst sustained permanent impairment in his right hip as a result of his fall, and that further treatment of the right hip may be required. Id. Dr. Morley's analysis of Mr. Fuerst's medical condition did not include any examination or evaluation of Mr. Fuerst's medical records prior to the alleged fall, which would have shown Dr. Morley Mr. Fuerst's significant degenerative damage in his right hip, the area which Dr. Morley now claims is the source of Mr. Fuerst's pain, discomfort, and permanent

impairment.  Defendant's medical expert, Dr. Patrick Schottel, confirms the import of Mr. Fuerst's prior medical records which demonstrate the causal connection between Mr. Fuerst's pre-existing degenerative condition and his current conditions.   Defendant's expert disclosure, is attached hereto as **Exhibit 5**.

## II.   Legal Standard

In <u>Daubert v. Merrell Dow Pharmaceuticals Inc.</u>, 509 U.S. 579 (1993), the Supreme Court set forth the standard by which a trial judge assesses the admissibility of an expert witness's testimony. The Court in Daubert provided five (5) factors that may be considered in determining whether an expert's methodology is valid: (1) whether the theory or technique in question can be and has been tested, (2) whether it has been subjected to peer review and publication, (3) its known or potential error rate and the existence and maintenance of standards controlling its operation, and (4) whether it has attracted widespread acceptance within a relevant scientific community. The Daubert standard can be extended to analyze medical expert testimony. <u>Kuhmo Tire v. Carmichael</u>, 526 US. 137 (1999).

The Federal Rules of Evidence set forth the general balancing test by which a court may exclude certain evidence. Under Fed. R. Evid. 403, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Rules of Evidence also provide the standard by which to determine whether an individual qualifies as an expert witness.  Under Fed. R. Evid. 702, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

**III.    Argument**

**Dr. Morley's Failed to Examine Mr. Fuerst's Prior Medical Records and Demonstrated No Understanding of Mr. Fuerst's Underlying Condition**

In his report evaluating Mr. Fuerst's medical condition and treatment following the subject loss. Dr. Morley stated that, "[Mr. Fuerst] denied any prior history of right hip problems before the injury of 3/13/2019." Under section of the report entitled 'Past Medical History,' Dr. Morley stated, "He gives a history of mildly symptomatic neck and back arthritis and has been seen by a chiropractor, Dr. Jeffrey Nakhjavan, for treatment of his back injury. He gives a history of right sciatica, as well as 'herniated disc at L5-S1'. He denies significant cardiopulmonary problems." Dr. Morley rendered these opinions without any knowledge ort understanding of the extensive medical history surrounding Mr. Fuerst's degenerative hip condition.

Apparently, Dr. Morley failed to review the records of Dr. Anthony Cappellino from January 2, 2018 and April 4, 2018, the records of Dr. Jeffrey Nakhjavan from September 6, 2018, the records from Excel Physical Therapy from October 1, 2018 and October 22, 2018, and the review of MRIs taken at Speare Memorial Hospital on March 13, 2019 suggesting degenerative hip damage. The records of Speare Memorial Hospital from March 13, 2019 are attached hereto as **Exhibit 6**. Dr. Morley purportedly used this very limited study of Mr. Fuerst's prior medical history along with the fundamentally inaccurate report of Mr. Fuerst relative to his lack of right hip issues prior to the subject fall - to form the basis of his findings regarding Mr. Fuerst's medical condition, including the state of his right hip, as of the date of his alleged fall at Waterville Valley

and to quantify his alleged permanent impairment. In reality, Mr. Fuerst has experienced a lengthy

history of right hip problems. He testified in his deposition that he had started experiencing right

hip pain as far back as 2014, and later had a cortisone injection in the right hip in 2017. Glenn

Fuerst's deposition at 67:15-20, 22-23; 68:1-2. In in a physical therapy treatment in October of

2018, the provider noted that Mr. Fuerst had a history of right lateral thigh pain and that his right

leg had previously given out. The record of Mr. Fuerst's treatment at Excel Rehabilitation on

October 1, 2018 is attached hereto as **Exhibit 7**. Mr. Fuerst presented to an orthopedic surgeon in

January of 2018 with a complaint of right hip pain, was diagnosed with right trochanteric bursitis

and right hip osteoarthritis and treated with a methylprednisone injection into the right trochanteric

bursa, and was prescribed anti-inflammatory medication. The record of Mr. Fuerst's treatment

with Dr. Anthony Cappellino on January 2, 2018 is attached hereto as **Exhibit 8**. Mr. Fuerst was

again diagnosed with right hip bursitis in the spring of 2018. The record of Mr. Fuerst's treatment

with Dr. Anthony Cappellino on April 4, 2018 is attached hereto as **Exhibit 9**. Mr. Fuerst was

again given a right hip injection.

Mr. Fuerst himself testified to the severely diminished condition of his right hip, stating:

Q. Sure. What about before the fall at Waterville – did any doctor tell you you
would need a hip replacement? A. Probably sometime later on in my life, yes. There
was nothing right now. Q. Who told you that you would need one? A. Dr.
Cappellino. Q. Do you know when it was that he first told you you would need a
hip replacement? A. No. Q. But it was some point before March 13 of 2019 that he
told you that; correct? A. Oh. Well, yeah, yes. Q. Well before then, he told you -.
A. Yes, yes. Q. Did any of your doctors tell you that you suffered from severe
degenerative joint disease in your right hip? A. Yes. Probably Dr. Nakhjavan and,
I'm assuming, Dr. Cappellino too. Q. Do you remember when they told you that?
A. I don't know exactly. I would say maybe five, six years or so ago.

Glenn Fuerst's deposition, 198:22-23; 199:1-22. Mr. Fuerst also treated with his primary

care doctor, in September of 2018, in which he again was assessed as having hip bursitis. The

5

record of Mr. Fuerst's treatment with Dr. Jeffrey Nakhjavan on September 6, 2018 is attached hereto as **Exhibit 10**. Mr. Fuerst attended multiple physical therapy sessions in October of 2018 in in which he regularly reported right hip pain. The records of Mr. Fuerst's treatment at Excel Physical Therapy on October 1, 2018 and October 22, 2018 are attached hereto as **Exhibit 7** and **Exhibit 11**.

Dr. Morley also failed to reference any prior medical imaging studies which clearly indicated degenerative damage in Mr. Fuerst's right hip. For example, radiographs on Mr. Fuerst's right hip from September of 2016 and January of 2018 showed degeneration of the hip. The records of Mr. Fuerst's treatment with Dr. Jeffrey Nakhjavan on September 30, 2016 are attached hereto as **Exhibit 12**; (**Exhibit 8**). Even at his hospital treatment on the date of Mr. Fuerst's alleged fall, he exhibited significant degenerative joint disease. (**Exhibit 6**).

Dr. Morley's failure to evaluate or take into account any of Mr. Fuerst's prior medical history illustrating clear signs of an already damaged and failing right hip makes it such that any evaluation of Mr. Fuerst's condition on the date of the alleged fall and his alleged injury is severely flawed and unreliable.

### The Allowance of Dr. Morley's Testimony Regarding His Conclusions Based on Mr. Fuerst's Alleged Injuries Would Contravene the Federal Rules of Evidence

The Federal Rules of Evidence set forth the general relevance standard for evidence. Under Fed. R. Evid. 401, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." And under Fed. R. Evid. 402, "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Crucially, Fed. R.

6

Evid. 403 provides that, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." It is under this Rule 403 balancing where Dr. Morley's findings, and any testimony stemming from those fundings, is highly problematic.

The admission of Dr. Morley's findings and opinions would both unfairly prejudice Waterville Valley and would not present this Court or the trier of fact with an accurate or reliable depiction of Mr. Fuerst's medical condition. His opinions are so grossly flawed that, as a gatekeeper, this Honorable Court should protect the jury from even the possibility of being exposed to such opinion. Moreover, the evidentiary balancing test set forth in Rule of Evidence 403 necessitates striking Dr. Morley's testimony. Even if this Honorable Court takes as correct the argument that all of Dr. Morley's medical testimony is relevant under Rule 401, the allowance of such testimony would clearly present a danger of unfair prejudice against Waterville Valley substantially outweighing any probative value it might present under Rule 403. It would also mislead the jury, as it does not paint an accurate picture of Dr. Morley's condition at the time of the alleged fall, and therefore provides no basis by which to correctly evaluate the causal relationship between Mr. Fuerst's alleged injuries and the events which occurred at Waterville Valley.

Courts will exclude expert testimony if it is likely to create unfair prejudice, confuse the issues, waste time, or mislead the jury. Sears, Roebuck & Co. v. Menard, Inc., No. 01 C 9843, 2003 U.S. Dist. LEXIS 951, at *10-11 (N.D. Ill. Jan. 22, 2003). Courts will also exclude expert testimony that, under the Rule 403 balancing test, creates a danger of unfair prejudice that outweighs the testimony's probative value. Danley v. Bayer (In re Mirena IUD Prods. Liab. Litig.),

169 F. Supp. 3d 396, 473 (S.D.N.Y. 2016). Since expert evidence can be both powerful and misleading because of difficulty in evaluating such evidence, a court in weighing possible prejudice against probative value under Rule 403 exercises more control over experts than over lay witnesses. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 595 (1993). These decisions should lead this Honorable Court to act in its role as a gatekeeper, which is encouraged and required by law, and which necessitates the exclusion of Dr. Morley's opinions and conclusions.

## Dr. Morley's Conclusions Regarding Permanent Impairment are Not Based on Sound Methodology Widely Accepted in the Medical Field

In Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579 (1993), the Supreme Court set forth the standard by which a trial judge assesses the admissibility of an expert witness's testimony. The Court in Daubert provided five (5) factors that may be considered in determining whether an expert's methodology is valid: (1) whether the theory or technique in question can be and has been tested, (2) whether it has been subjected to peer review and publication, (3) its known or potential error rate and the existence and maintenance of standards controlling its operation, and (4) whether it has attracted widespread acceptance within a relevant scientific community. The Daubert standard can be extended to analyze medical expert testimony. Kuhmo Tire v. Carmichael, 526 US. 137 (1999).

As part of his report, Dr. Morley stated that Mr. Fuerst has sustained permanent impairment based on his injuries purportedly caused by the alleged fall at Waterville Valley. However, Dr. Morley's finding of permanent impairment is not based on a sound or reliable methodology accepted in the field, as is required under Daubert. As support for his finding of permanent impairment, Dr. Morley referenced a table in the AMA Guides to the Evaluation of Permanent Impairment, Sixth Edition. That publication states provides that, "The physician's role in

8

performing an impairment evaluation is to provide an independent, unbiased assessment of the individual's medical condition, including its effect on function, and of limitations to the performance of Activities of Daily Living, or ADLs…" Id. at 23.

Importantly, it also provides that, "Thorough, complete and accurate reporting by the rating physician affords the best opportunity to communicate details of the impairment and its impact, if any, on the patient, in a forum acceptable to other medical professionals, attorneys, and adjudicators." Id. These guidelines are also in line with the standard set forth in Daubert, which prescribes a non-exhaustive list of factors by which to evaluate the scientific methodology employed by an expert, which includes acceptance in a particular scientific discipline or field. Daubert, 509 U.S. at 593. As is clear from the fact that Dr. Morley's methods fall far short of the industry standard articulated in the AMA Guides, there is little chance that Dr. Morley's methodology would be accepted in any field of medical inquiry or evaluation.

Unfortunately, Dr. Morley's report, and any testimony that would stem from his findings on permanent impairment, falls far short of "thorough, complete, and accurate" reporting. As previously established, Dr. Morley's report does not take into account, and further still, makes no comment whatsoever on, Mr. Fuerst's prior medical history involving degenerative hip damage. There is little chance that such an incomplete methodology would allow him to reliably "communicate details of the impairment and its impact," since Dr. Morley's findings completely ignore the significant presence of Mr. Fuerst's already damaged right hip. On this point, the AMA Guides specifically states that a permanent impairment evaluation involves a full review of medical records, including a patient's past medical history, "*before* performing an impairment rating…" (Emphasis added.) Id. at 28. This evaluation of past medical history allows the physician to clarify or document inconsistencies between the history a patient provides to them and the history

contained in the records, reconcile inconsistencies between the patient's history during the examination and other previous medical records, and to focus on the portions of the history pertinent to the impairment rating. Id. The Guides plainly provide that, "It is necessary to clarify historical inconsistencies because several issues, including causation, are primarily determined by the history." Id.

Dr. Morley is a member of the American Academy of Orthopedic Surgeons (AAOS). The *curriculum vitae* of Dr. Morley is attached hereto as **Exhibit 13**. Despite this, Dr. Morley's methods also fell short of the mandatory standards that this association prescribes for orthopedic doctors giving expert opinion and testimony. The AAOS states that, "An orthopaedic surgeon who provides oral or written medical testimony or expert medical opinions shall seek and review all pertinent medical records and applicable legal documents, including relevant prior depositions, before rendering any statement or opinion on the medical or surgical management of the patient." The AAOS Standards of Professionalism are attached hereto as **Exhibit 14**. Dr. Morley's complete lack of any evaluation of or reference to Mr. Fuerst's prior medical records regarding the condition of his right hip does not comply with orthopedic industry standards, and this serves as yet another ground indicating the unreliability and unsoundness of Dr. Morley's methodology.

Despite Dr. Morley's apparent reliance on the AMA Guides as the basis for his evaluation of permanent impairment, the industry-standard principles that the very same publication provides for expert evaluation of impairment makes it clear that Dr. Morley's methodology fell far short of standard practice in the medical field, rendering his finding of permanent impairment wholly unreliable. Moreover, one of the previously listed factors in Daubert by which courts may evaluate the admissibility of expert findings is whether a particular methodology is widely accepted in its field. The gulf in reliability and thoroughness between what a respected, industry-standard

10

publication suggests for medical experts rendering conclusions on permanent impairment, and the substandard methodology employed by Dr. Morley could not be wider. Therefore, Dr. Morley's findings on permanent impairment are unreliable, misleading, unsubstantiated, and is another reason why this Honorable Court should strike his testimony.

**IV.    Conclusion**

In conclusion, therefore, this Honorable Court should grant the Defendant's motion to strike the Plaintiffs' expert medical witness, Dr. David C. Morley, Jr., because of his unreliable and substandard methodology, his failure to take into account Mr. Fuerst's full medical history, and because his testimony would mislead a jury and prejudice the Defendant. In the alternative, the Defendant respectfully requests that this Court schedule a Daubert hearing.

Respectfully submitted,
WVSR, LLC
By Its Attorney

Timothy W. Tapply, Esq. Bar #269918
ttapply@brandtapply.com
Brand & Tapply, LLC
555 Washington Street, Suite 6
Wellesley, MA  02482
(781) 431-7878